**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

February 6, 2020

**BY ECF**

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:  United States v. Ambiorix Frias**
       **03 CR 595 (LTS)**

Dear Judge Swain:

"To have a job and work honestly is all I want for my future."  - Ambiorix Frias

    Ambiorix Frias, now a 38-year-old man, has served his entire adult life in custody for acts he committed when he was 20 years old.  He is the only remaining member of the Hobbs Act robbery conspiracy still in jail and remains remorseful for his conduct that led him to where he finds himself today.  In the 18 years Mr. Frias has served in State custody followed by BOP custody, he has demonstrated that he no longer poses a risk to commit future crimes and that he has been fully rehabilitated. [1]

    He is now scheduled to appear before Your Honor on February 20, 2020 for vacatur of his 924(c) conviction, following the Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (June 24, 2019), and resentencing on the remaining count of conspiracy to commit Hobbs Act robbery.  Mr. Frias was originally sentenced by this Court to the minimum of the Guidelines range – a term of 183 months' imprisonment.  He is scheduled to be released by the Bureau of Prisons on September 10, 2026 – nearly 80 months from now.  He will be deported as soon as his sentence is complete.  For the reasons detailed herein, we ask that the Court resentence Mr. Frias to time served.

---

[1] On June 24, 2005, in an unrelated New Jersey matter, Mr. Frias was sentenced to a term of fifteen years' imprisonment to be run consecutively to his federal sentence.

1

Original Plea and Sentence

Mr. Frias was arrested on June 3, 2003 for the instant case[2] and pled guilty on October 12, 2004 to two counts: (1) conspiracy to commit a Hobb's Act robbery (18 USC § 1951) and discharging a firearm during and in relation to a robbery conspiracy (18 USC § 924(c)(1)(A)(iii)). At his sentencing on April 19, 2005, Mr. Frias' guidelines range was determined to be 183 to 198 months (63 to 78 months on Count One and 120 months on Count Two).

The Court sentenced Mr. Frias to the bottom of the guidelines range, 183 months. Specifically, the court sentenced Mr. Frias to 63 months on Count One and 120 months on Count Two.

Plea Vacatur

The parties agree that Mr. Frias' conviction for Count Two cannot stand following the Supreme Court's decision in Davis. In Davis, the Supreme Court held that the "residual clause" of 18 U.S.C. § 924(c)(3)(B) is unconstitutional. In so declaring, the Court held that conspiracy to commit Hobbs Act no longer qualifies as a "crime of violence." Therefore, conspiracy to commit Hobbs Act robbery cannot properly serve as a predicate offense for § 924(c). Accordingly, the prosecution concedes that Mr. Frias' conviction for Count Two must be vacated.

After Count Two is vacated, Mr. Frias is eligible for resentencing on Count One. The defense calculates the new guidelines for Count One the same way as the Probation Department: the base level is 20, plus an additional 7 levels for the firearm as well as the specific offense characteristics, the total offense level is 33. With criminal history category I, the resulting range is 135 to 168 months.

Appropriate Sentence

Mr. Frias has been in prison for 206 months – 83 of which have been in federal custody. During that time, the statutory goals of sentencing have been achieved.

First, Mr. Frias has been significantly punished and specifically deterred. The aggregate 206 months that Mr. Frias has already served is, by far, the longest term of imprisonment of his life. Indeed, having entered into custody when he was only 20 years old, Mr. Frias has spent the entirety of his adult life incarcerated.

Mr. Frias has been incarcerated with limited to no access to his immediate family since 2002. His mother, brother, and sister have lived in Santurce, Puerto Rico throughout these 18 years while Mr. Frias remained detained in distant facilities, such as Oklahoma and Louisiana. During this time, Mr. Frias' brother, Julio, has had two children – J▮▮▮▮ (17) and J▮▮▮ (8),

---

[2] While Mr. Frias was only received into federal custody and arrested on the instant matter on June 3, 2003, he was arrested and in custody on the New Jersey matter beginning in November 2002.

neither of whom Mr. Frias has met.  Similarly, Mr. Frias' sister, Kenlla, has a daughter K█ (11), whom he looks forward to finally meeting upon his release.  As Julio, explains, Mr. Frias' distance from the family has been impactful:  "we are both sad because he has not been able to meet my children who are his [nieces and] nephews, he was always a very family-oriented man."  See Exhibit A, Family Letters.

  Indeed, Mr. Frias has missed out on countless life events and moments with his loved ones, which is particularly devastating to this close-knit, loving family.  Mr. Frias' family describes the overwhelming sadness in not having Mr. Frias present with the family for the holidays and how, in his absence, they feel a real loss.  As Kenlla recounts, "[a]ll of [us] are very sad that we cannot be together as a family and are separated from him, we all feel sad and discouraged, unable to celebrate as a family as we used to at Christmas."  See Exhibit A.  Despite these lost opportunities, Mr. Frias is still nonetheless optimistic in looking towards what is left of the future with his family.  In his letter, Mr. Frias describes his excitement in getting the opportunity "to be with them and buy my nieces and nephew candy, take them to the movies, spend time with them."  See Exhibit B, Client Letter.

  Throughout his sentence, Mr. Frias also committed himself to his own rehabilitation.  He has largely stayed out of trouble, having only eight disciplinary incidents throughout his time in federal custody.  Additionally, he has taken classes that will improve him emotionally and professionally and enable him to be a productive member of his family and community.

  For example, Mr. Frias has worked diligently on improving his English by taking English proficiency courses during his time incarcerated, which will greatly assist him in his employability in the Dominican Republic.  Mr. Frias has also taken a plumbing course to assist him with any potential employment opportunities in Nagua or nearby cities.  Moreover, Mr. Frias has taken multiple parenting classes to prepare him for what he hopes will be the most significant task of his life:  fatherhood.  Starting a family and gaining employment will be Mr. Frias' primary focus upon his return.  As a testament as to how much of Mr. Frias' life has passed behind bars and how little he is taking for granted, Mr. Frias' looks forward to one of the simplest pleasures in life:  self-established stability.  "To have a job and work honestly is all I want for my future."  See Exhibit B.

  In addition to his own personal goals, Mr. Frias also hopes to impact his surrounding community by working with youth who are heading down the same misguided path he was on at their age.  Mr. Frias believes that these kids feel "empty, unloved" and hopes to provide them with the guidance that he never had growing up and "explain there is another way of life."  See Exhibit B.

  Notably, Mr. Frias still exhibits significant remorse for the conduct that led to his incarceration.  These 18 years have allowed Mr. Frias to reflect on his misdeeds and work towards redemption:  "I also want to apologize to all the people I harmed.  I think always of those two children, the harm I could have brought them, I pray to God for them always."  See Exhibit B.

Plans for the Future

      Mr. Frias will build his future in the Dominican Republic.  Unlike his time incarcerated, Mr. Frias will have the liberty to contact his family in Puerto Rico and can communicate with them via text message, FaceTime, WhatsApp, and other applications.  Despite their physical distance, Mr. Frias will be able to maintain close connection in way that he could not while incarcerated.  Moreover, the family can visit him in neighboring Dominican Republic with ease, so he can finally spend the quality time with his nieces and nephew that he has longed for throughout these years.

      While Mr. Frias' immediate family will be living in Puerto Rico, his Aunt Ramona still lives in Nagua, Dominican Republic, where Mr. Frias was raised.  Mr. Frias looks forward to living and reconnecting with his aunt as she raised Mr. Frias when his mother first left Dominican Republic for Puerto Rico for a job opportunity.  In Nagua, Mr. Frias hopes to find work in the HVAC industry, but if not, will rely on his plumbing trade skills that he developed while incarcerated.

      Mr. Frias and his family have made clear plans for the future in a different country, away from the criminality that has marred his past. He has the tools and the drive to successfully reenter the community in his home country as a productive member of society.  As such, particularly in light of the 15-year State consecutive sentence Mr. Frias has already served, a sentence of time served is appropriate in this case.

      Respectfully Submitted,

/s/ *Marisa K. Cabrera*

Marisa K. Cabrera
Counsel for Mr. Frias

CC:  AUSA Kaylan Lasky

4